**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ARTHUR H. STOKES,**

     **Plaintiff,**

**v.**                                 **CASE NO.:** _____

**ABLE SERVICES,**

     **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ARTHUR H. STOKES, by and through his undersigned counsel, hereby files suit against Defendant, ABLE SERVICES, a California corporation.  In support thereof, Stokes alleges the following:

**JURISDICTION AND VENUE**

1.     This is an employment discrimination and retaliation action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as amended ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("§1981"); and the Florida Civil Rights Act of 1992, §760.01, Fla. Stat., *et seq.* ("FCRA").

2.     This Court has jurisdiction over the Title VII and §1981 claims pursuant to 28 U.S.C. §1331 as this is a civil action arising under the laws of the United States (Federal Question). This Court also has supplemental jurisdiction over the FCRA state law claims pursuant to 28 U.S.C. §1367, as those claims are so related to the federal law claims that they form part of the same case or controversy.

3.      Venue is proper in the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §1391(b) and Local Rule 1.04(b), because the unlawful employment practices alleged were committed in Orlando, Orange County, Florida and because the Defendant operates and does business in Orlando, Orange County, Florida.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.      On or about December 18, 2019, Stokes timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").  A true and correct copy of the Charge of Discrimination is attached hereto and incorporated herein as Exhibit A.

5.      The EEOC issued a Notice of Right to Sue on February 8, 2021.  A true and correct copy of the EEOC's Notice of Right to Sue is attached hereto and incorporated herein as Exhibit B. This action is being filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

6.      Plaintiff has exhausted all administrative remedies prior to the filing of this lawsuit. All other conditions precedent to the commencement and maintenance of this action have been satisfied or waived.

## STATEMENT OF THE PARTIES

7.       Plaintiff Stokes is an individual residing in Kissimmee, Osceola County, Florida.

8.      Defendant Able is a California company doing business in the State of Florida, including Orange County, Florida. Defendant has at least 15 employees and has been engaged in an industry affecting commerce, pursuant to Title VII.  At all times relevant to this action, Defendant has continuously been a private employer within the meaning of 42 U.S.C. §2000e(b) and Chapter 760.02, Fla. Stat., and §1981.

**STATEMENT OF FACTS**

9.     Plaintiff was hired as a Facility Technician on April 25, 2016 to work at the SunTrust Center in Orlando, Florida. He was, and still is, the only African American employee of the Defendant in all of Central Florida. Although he began performing the duties of an Engineer in October 2016, he has never been promoted to Engineer. Additionally, Plaintiff is one of the most decorated "engineers" employed at the SunTrust Center, having more relevant certifications than his co-workers.

10.     Plaintiff has been the victim of a hostile work environment and racial bias from the beginning of his employment.

11.     Within less than two months of being employed, Plaintiff was assaulted by a white co-worker, Robert Simpkins. Plaintiff reported the assault to his supervisor, Randy Teague ("Teague"); however, no remedial action was taken and no workplace violence training was provided.

12.     Since Plaintiff's supervisor failed to take any action, Plaintiff reported the assault to Michael Bopp ("Bopp"), the Regional Manager. Simpkins was never disciplined, but instead was allowed to resign.

13.     In comparison, when there was a harassment allegation raised by a white employee, that matter was investigated. As a result, employees were required to attend a 6-hour mandatory training seminar and the accused harasser was disciplined.

14.     Plaintiff was subjected to numerous derogatory comments and actions, mostly by his supervisor, Teague. For example, Teague repeatedly referred to Plaintiff as "half a man," which has historic significance related to slavery. The first time the comment was made, in July

2016, the facility was understaffed with only three employees. Teague made the comment, "look at everything we're accomplishing with two and a half men." Although Plaintiff told Teague he was offended by the comment, Teague continued to refer to him as "half a man."

15. Plaintiff began performing the duties of an engineer in about October 2016. Plaintiff also had previous engineering experience from his service in the Navy and possessed numerous relevant certifications. However, Teague repeatedly told Plaintiff that he was unqualified for a promotion to engineer and that his previous military experience was "not applicable."

16. Plaintiff was denied a promotion to Lead Engineer on June 1, 2017, which was awarded to Attila Nagy.

17. Teague had threatened on May 23, 2017 that he would hire someone to "leapfrog" over Plaintiff. Shortly thereafter, on June 15, 2017, Billy Anderson (who is white), was hired into an engineer position over Plaintiff.

18. On June 22, 2017, Plaintiff reported this hostile environment and the discriminatory practices, including promotion denials and Teague's comments, to Bopp. By that evening, Plaintiff was notified that his work hours had changed.

19. Upon receiving no response to his complaints, Plaintiff reported these discrimination and retaliation issues to Dawn Short, in Human Resources on July 7, 2017. Although Bopp and Short visited the site on August 9, 2017, purportedly to investigate Plaintiff's complaints, the harassment and derogatory comments continued.

20. For example, on one occasion, Plaintiff was wearing overalls to work, a co-worker referred to him as an "inmate." Someone else made the comment "blame it on the Black man."

There was also a discussion in the workplace about Black men "sagging" their pants and that it "comes from being someone's bitch in prison."

21.     On or about June 23, 2016, Teague changed Plaintiff's intranet password to "butthole" (which he was required to use for three years) and Plaintiff was the only engineer required to check out his keys to the facility.

22.     Despite Plaintiff's complaints to Bopp and HR, the derogatory comments continued. For example, white coworkers made comments that "slavery was not as bad as people say." Teague made a comment that if Plaintiff grew out his beard he would look like a terrorist. Plaintiff was also repeatedly referred to as the "low man on the totem pole" despite his seniority and years of experience.

23.     When Plaintiff asked for additional training, Teague responded that he "asked too many questions" and wanted to grow too fast.

24.     On March 4, 2019, Plaintiff was trapped in an elevator and a white coworker, the Elevator Tech, berated Plaintiff over the intercom while he was still trapped. This incident was reported to Teague but no action was taken. Instead, Teague later posted a "Hurt Feelings" Report in the engineering control room to further humiliate Plaintiff.  That report was posted in May 2019 and was not removed until August 2019.

25.     On August 22, 2019, Plaintiff submitted another written complaint to Dawn Short in HR regarding the continued racial discrimination and harassment toward him. No one ever followed up with Plaintiff about his complaints or the status of the company's purported investigations. In fact, Bopp came to the site on or about September 9, 2019 and spoke with Teague but did not speak with Plaintiff about his complaints.

26.     According to the Defendant's response to Plaintiff's EEOC Charge, Randy Teague was given a disciplinary warning regarding his derogatory comments to Plaintiff on August 28, 2019.

27.     On August 29, 2019, Plaintiff applied for, and was again denied, a promotion to an engineer position because he purportedly lacked the necessary qualifications, despite the fact that he had been performing all of the job duties for the position since October 2016.  Tim Arwood, Caucasian, was hired to fill the position.

28.     Teague instructed Plaintiff to come to work early because of traffic and Plaintiff complied. However, on October 4, 2019, after Teague had purportedly been disciplined, Teague "snapped" on Plaintiff when he arrived early, yelling at Plaintiff that he did not want to see his face at work early that day.

29.     When Plaintiff tried to explain that he was only reporting to work early based on Teague's instruction, Teague had Plaintiff escorted from the work site by security and suspended him for two (2) days without pay for alleged "insubordination."

30.     On the other hand, Michael Garcia and Billy Anderson, neither of whom are African American, were allowed to come to work early (often more than 20 minutes early) on many occasions and were never disciplined.

31.     On October 14, 2019, Plaintiff injured his back when crawling under a piece of equipment. Plaintiff told Teague that his back was hurting, and Plaintiff used some of his PTO to attempt to recover from the injury. At no time did the Defendant ask Plaintiff to fill out a workers' compensation injury form as required under company policy.

32.     Further, Plaintiff's productivity was repeatedly questioned following his workplace injury while he was on limited duty. However, this type of surveillance was not conducted of another employee, Michael Garcia, who was injured in November 2019. Nor was Garcia questioned about his productivity following his workplace injury. Plaintiff reported this harassing surveillance to Bopp, but no action was taken.

33.     On October 25, 2019, Plaintiff was called into a "last chance" meeting with Teague during which he was threatened with termination if he did not change his "demeanor." During that meeting, Teague told Plaintiff that he has a "racist father."

34.     Until that point, Plaintiff had never been told there were any alleged issues with his demeanor or any other aspect of his job performance.

35.     During the "last chance" meeting, Plaintiff expressed that he was being treated differently because of his race and specifically mentioned the fact that he was continually denied promotions to engineer. Teague responded that Plaintiff was being racist towards him, as a white person, by complaining of race discrimination.

36.     Beginning around October 30, 2019, Teague began following Plaintiff around and taking videos and pictures of Plaintiff with his cell phone in an attempt to accuse Plaintiff of workers' compensation fraud.

37.     On November 11, 2019, Plaintiff emailed another Complaint to HR expressing that his suspension and the threat of termination were retaliation for lodging another formal complaint against his supervisor, Teague. Plaintiff also reported that he was still the only engineer required to check his keys to the facility in and out and the only employee denied overtime opportunities.

38.     On November 12, 2019, Teague sent an email to all of the engineers regarding training that would be provided to them on Mul-T Locks. Although Plaintiff also worked with these types of locks daily, he was the only employee who did not receive notice of the training.

39.     On November 18, 2019, Plaintiff complained to HR about Teague's surveillance of him, and about the fact that he was being denied training. Short's response to Plaintiff's complaints on November 18, 2019 was to "refrain from stating everything is racially motivated."

40.     Based on the continued racially harassing, racially discriminatory and retaliatory actions of Defendant, Plaintiff was forced to voluntarily resign his employment with Defendant on or about August 1, 2020. Plaintiff could no longer tolerate the harassment, discrimination and retaliation that was ongoing against him and felt compelled to resign. Thus, Plaintiff was constructively discharged on or about August 1, 2020.

**COUNT I**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**
**(Disparate Treatment)**

41.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

42.     Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e(j) and 2000e-2(a), as amended, by engaging in intentional discrimination against Plaintiff based on his race, African American.

43.     Plaintiff is a member of a protected class and he was qualified for his position.

44.     Plaintiff was subjected to adverse employment actions and was treated less favorably than similarly situated employees outside of his protected class.

45.     Specifically, Defendant intentionally discriminated against Plaintiff by denying

him promotions, treating him less favorably than employees outside his protected group with regard to his workplace injury and training, and suspending him for following his supervisor's instructions.

46.     Less qualified white employees were promoted or hired into engineer positions over Plaintiff, despite the fact that he had been performing those job duties for several years and was clearly qualified.

47.     Plaintiff was treated less favorably than employee Michael Garcia, who is not African American, with regard to his workplace injury, including being harassed and surveilled when Garcia was not.

48.     Plaintiff was suspended without pay for two days for simply complying with his supervisor's instructions. White employees were not disciplined despite being rude and insubordinate.  White employees were also not disciplined for more egregious rule violations.

49.     The effect of Defendant's discrimination against Plaintiff was to deprive him of the equal employment opportunities described herein, in violation of Title VII.

50.     Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of Title VII.

51.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT II**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**
**(Hostile Work Environment)**

52.     Plaintiff adopts and incorporates by reference the allegations contained in

Paragraphs 1- 40 of this Complaint.

53.      Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e(j) and 2000e-2(a), as amended, by subjecting Plaintiff to a hostile work environment based on his race, African American.

54.      Plaintiff is a member of a protected class, as he is African-American.

55.      Plaintiff was subjected to a workplace that was permeated with discriminatory intimidation, ridicule, and insult. As described in the preceding paragraphs, Plaintiff was repeatedly subjected to racially offensive and abusive comments, as well as violence and threats, throughout the term of his employment. The racial harassment he experienced was unwelcome and he repeatedly objected to such harassment.

56.      The harassment was based on his race, including comments such as "slavery is not as bad as people say," "blame it on the Black man," and Black men "sagging" their pants "from being someone's bitch in prison."

57.      This harassment was sufficiently severe and pervasive to alter the terms of Plaintiff's employment and create a discriminatorily abusive working environment that was both subjectively and objectively hostile. Not only did Plaintiff subjectively perceive the environment to be abusive, eventually causing him to resign, but the work environment was one that a reasonable person would find hostile or abusive.

58.      The harassing conduct was frequent, severe, and involved more than mere offensive utterances, which ultimately interfered with Plaintiff's job performance. Viewing the allegations cumulatively and in the totality of the circumstances, the unwelcome racial harassment was severe and pervasive.

59.     Able Services is responsible for this hostile environment because the company knew or should have known of the harassing conduct but failed to take prompt remedial action. Able Services had actual knowledge of the harassment by way of Plaintiff's repeated complaints.  Additionally, the harassment was so severe and pervasive that management should have known of it.

60.     Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of Title VII. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT III**
**RACE DISCRIMINATION IN VIOLATION OF TITLE VII**
**(Constructive Discharge)**

61.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

62.     Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e(j) and 2000e-2(a), as amended, by engaging in intentional discrimination against Plaintiff based on his race, African American.

63.     Plaintiff is a member of a protected class and he was qualified for his position.

64.     Plaintiff was subjected to adverse employment actions and was constructively discharged from his employment with the Defendant.

65.     Specifically, Defendant intentionally discriminated against Plaintiff by creating working conditions that were so intolerable, when judged objectively, that a reasonable person

in his position would have been compelled to resign.

66.     Defendant intentionally rendered Plaintiff's working conditions so intolerable based on Plaintiff's race, that Plaintiff was compelled to quit involuntarily on August 1, 2020.

67.     The effect of Defendant's discrimination against Plaintiff was to deprive him of the equal employment opportunities described herein, in violation of Title VII.

68.     Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of Title VII. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VII**

69.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1-40 of this Complaint.

70.     Plaintiff's repeated complaints to management and HR about race discrimination, harassment and retaliation constituted protected activity.

71.     Defendant's actions in suspending Plaintiff for two days without pay, giving him a "final warning" and threatening to terminate him, constitute unlawful retaliation in violation of §701(j) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e(j) and 2000e-2(a), as amended.

72.     Defendant's retaliatory actions were done with malice and reckless indifference to Plaintiff's federally protected rights in violation of Title VII.

73.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of

earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT IV**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**
**(Disparate Treatment)**

74.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

75.     Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 1981 ("§1981"), by engaging in intentional discrimination against Plaintiff based on his race, African American.

76.     Plaintiff is a member of a protected class and he was qualified for his position.

77.     Plaintiff was subjected to adverse employment actions and was treated less favorably than similarly situated employees outside of his protected class.

78.     Specifically, Defendant intentionally discriminated against Plaintiff by denying him promotions, treating him less favorably than employees outside his protected group with regard to his workplace injury and training, and suspending him for following his supervisor's instructions.

79.     Less qualified white employees were promoted or hired into engineer positions over Plaintiff, despite the fact that he had been performing those job duties for several years and was clearly qualified.

80.     Plaintiff was treated less favorably than employee Michael Garcia, who is not African American, with regard to his workplace injury, including being harassed and surveilled when Garcia was not.

81.     Plaintiff was suspended without pay for two days for simply complying with his supervisor's instructions. White employees were not disciplined despite being rude and insubordinate.  White employees were also not disciplined for more egregious rule violations.

82.     The effect of Defendant's discrimination against Plaintiff was to deprive him of the equal employment opportunities described herein, in violation of §1981.

83.     Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of §1981.

84.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT V**
**RACE DISCRIMINATION IN VIOLATION OF §1981**
**(Hostile Work Environment)**

85.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

86.     Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. §1981, by subjecting Plaintiff to a hostile work environment based on his race, African American.

87.     Plaintiff is a member of a protected class, as he is African-American.

88.     Plaintiff was subjected to a workplace that was permeated with discriminatory intimidation, ridicule, and insult. As described in the preceding paragraphs, Plaintiff was repeatedly subjected to racially offensive and abusive comments, as well as violence and threats, throughout the term of his employment. The racial harassment he experienced was

unwelcome and he repeatedly objected to such harassment.

89.     The harassment was based on his race, including comments such as "slavery is not as bad as people say," "blame it on the Black man," and Black men "sagging" their pants "from being someone's bitch in prison."

90.     This harassment was sufficiently severe and pervasive to alter the terms of Plaintiff's employment and create a discriminatorily abusive working environment that was both subjectively and objectively hostile. Not only did Plaintiff subjectively perceive the environment to be abusive, eventually causing him to resign, but the work environment was one that a reasonable person would find hostile or abusive.

91.     The harassing conduct was frequent, severe, and involved more than mere offensive utterances, which ultimately interfered with Plaintiff's job performance. Viewing the allegations cumulatively and in the totality of the circumstances, the unwelcome racial harassment was severe and pervasive.

92.     Able Services is responsible for this hostile environment because the company knew or should have known of the harassing conduct but failed to take prompt remedial action. Able Services had actual knowledge of the harassment by way of Plaintiff's repeated complaints.   Additionally, the harassment was so severe and pervasive that management should have known of it.

93.     Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of §1981.

As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment

of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT VI**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**
**(Constructive Discharge)**

94.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

95.     Defendant has engaged in unlawful employment practices in violation of 42 U.S.C. § 1981 ("§1981"), by engaging in intentional discrimination against Plaintiff based on his race, African American.

96.     Plaintiff is a member of a protected class and he was qualified for his position.

97.     Plaintiff was subjected to adverse employment actions and was constructively discharged from his employment with the Defendant.

98.     Specifically, Defendant intentionally discriminated against Plaintiff by creating working conditions that were so intolerable, when judged objectively, that a reasonable person in his position would have been compelled to resign.

99.     Defendant intentionally rendered Plaintiff's working conditions so intolerable based on Plaintiff's race, that Plaintiff was compelled to quit involuntarily on August 1, 2020.

100.    The effect of Defendant's discrimination against Plaintiff was to deprive him of the equal employment opportunities described herein, in violation of §1981.

101.    Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of §1981.

102.    As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a

loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT VII**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**

103.    Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1-40 of this Complaint.

104.    Plaintiff's repeated complaints to management and HR about race discrimination, harassment and retaliation constituted protected activity.

105.    Defendant's actions in suspending Plaintiff for two days without pay, giving him a "final warning" and threatening to terminate him, constitute unlawful retaliation in violation of 42 U.S.C. § 1981.

106.    Defendant's retaliatory actions were done with malice and reckless indifference to Plaintiff's federally protected rights in violation of §1981.

107.    As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT VIII**
**RACE DISCRIMINATION IN VIOLATION OF THE FCRA**
**(Disparate Treatment)**

108.    Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

109.    Defendant has engaged in unlawful employment practices in violation of the Florida Civil Rights Act of 1992, Chap. 760, *Fla. Stat.* ("FCRA"), by engaging in intentional discrimination against Plaintiff based on his race, African American.

110.    Plaintiff is a member of a protected class and he was qualified for his position.

111.    Plaintiff was subjected to adverse employment actions and was treated less favorably than similarly situated employees outside of his protected class.

112.    Specifically, Defendant intentionally discriminated against Plaintiff by denying him promotions, treating him less favorably than employees outside his protected group with regard to his workplace injury and training, and suspending him for following his supervisor's instructions.

113.    Less qualified white employees were promoted or hired into engineer positions over Plaintiff, despite the fact that he had been performing those job duties for several years and was clearly qualified.

114.    Plaintiff was treated less favorably than employee Michael Garcia, who is not African American, with regard to his workplace injury, including being harassed and surveilled when Garcia was not.

115.    Plaintiff was suspended without pay for two days for simply complying with his supervisor's instructions. White employees were not disciplined despite being rude and insubordinate.  White employees were also not disciplined for more egregious rule violations.

116.    The effect of Defendant's discrimination against Plaintiff was to deprive him of the equal employment opportunities described herein, in violation of the FCRA.

117.    Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of FCRA.

118.    As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT IX**
**RACE DISCRIMINATION IN VIOLATION OF THE FCRA**
**(Hostile Work Environment)**

119.    Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

120.    Defendant has engaged in unlawful employment practices in violation of Florida Civil Rights Act of 1992, Chap. 760, Fla. Stat., by subjecting Plaintiff to a hostile work environment based on his race, African American.

121.    Plaintiff is a member of a protected class, as he is African-American.

122.    Plaintiff was subjected to a workplace that was permeated with discriminatory intimidation, ridicule, and insult. As described in the preceding paragraphs, Plaintiff was repeatedly subjected to racially offensive and abusive comments, as well as violence and threats, throughout the term of his employment. The racial harassment he experienced was unwelcome and he repeatedly objected to such harassment.

123.    The harassment was based on his race, including comments such as "slavery is not as bad as people say," "blame it on the Black man," and Black men "sagging" their pants "from being someone's bitch in prison."

124.    This harassment was sufficiently severe and pervasive to alter the terms of Plaintiff's employment and create a discriminatorily abusive working environment that was both subjectively and objectively hostile. Not only did Plaintiff subjectively perceive the environment to be abusive, eventually causing him to resign, but the work environment was one that a reasonable person would find hostile or abusive.

125.    The harassing conduct was frequent, severe, and involved more than mere

offensive utterances, which ultimately interfered with Plaintiff's job performance. Viewing the allegations cumulatively and in the totality of the circumstances, the unwelcome racial harassment was severe and pervasive.

126.    Able Services is responsible for this hostile environment because the company knew or should have known of the harassing conduct but failed to take prompt remedial action. Able Services had actual knowledge of the harassment by way of Plaintiff's repeated complaints.   Additionally, the harassment was so severe and pervasive that management should have known of it.

127.    Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of the FCRA. As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT X**
**RACE DISCRIMINATION IN VIOLATION OF THE FCRA**
**(Constructive Discharge)**

128.    Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1- 40 of this Complaint.

129.    Defendant has engaged in unlawful employment practices in violation of the Florida Civil Rights Act of 1992, Chap. 760, *Fla. Stat.* ("FCRA"), by engaging in intentional discrimination against Plaintiff based on his race, African American.

130.    Plaintiff is a member of a protected class and he was qualified for his position.

131.    Plaintiff was subjected to adverse employment actions and was constructively discharged from his employment with the Defendant.

132.    Specifically, Defendant intentionally discriminated against Plaintiff by creating working conditions that were so intolerable, when judged objectively, that a reasonable person in his position would have been compelled to resign.

133.    Defendant intentionally rendered Plaintiff's working conditions so intolerable based on Plaintiff's race, that Plaintiff was compelled to quit involuntarily on August 1, 2020.

134.    The effect of Defendant's discrimination against Plaintiff was to deprive him of the equal employment opportunities described herein, in violation of the FCRA.

135.    Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights in discriminating against Plaintiff because of his race in violation of the FCRA.

136.    As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

**COUNT XI**
**RETALIATION IN VIOLATION OF THE FCRA**

137.    Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1-40 of this Complaint.

138.    Plaintiff's repeated complaints to management and HR about race discrimination, harassment and retaliation constituted protected activity.

139.    Defendant's actions in suspending Plaintiff for two days without pay, giving him a "final warning" and threatening to terminate him, constitute unlawful retaliation in violation of the FCRA.

140.     Defendant's retaliatory actions were done with malice and reckless indifference to Plaintiff's rights in violation of the FCRA.

141.     As a result of Defendant's unlawful actions, Plaintiff has suffered a loss of earnings, wages, seniority, and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress and related damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ARTHUR R. STOKES, respectfully prays for the entry of a judgment in his favor, and against Defendant, ABLE SERVICES, for the following relief:

1.     Lost wages, compensation and other employment benefits caused by Defendant's unlawful actions;

2.     Compensatory damages for emotional distress, embarrassment and humiliation, loss of dignity, damage to his reputation, and related damages in an amount to be determined by the jury;

3.     Punitive damages in an amount to be determined by the jury;

4.     A declaration that the Defendant's acts and practices complained of are in violation of Title VII, §1981, and the FCRA;

5.     An order enjoining and permanently restraining these violations;

6.     A declaration directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

7.     Prejudgment and post-judgment interest;

8.     Reasonable attorney's fees and costs in accordance with applicable law; and

9.     Such other relief as Plaintiff may be entitled to under the premises.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues and counts in this Complaint so triable as a matter of right.

**DATED**: May 5th, 2021

Respectfully submitted,

/s/ Deborah Frimmel

**DEBORAH FRIMMEL, ESQ.**
Florida Bar Number 93970
deborah@burruezolaw.com
docketing@burruezolaw.com
**BURRUEZO & BURRUEZO, PLLC**
911 Outer Road
Orlando, Florida 32814
Office: 407.630.6650
Facsimile: 407.754.2905

*Attorney for Plaintiff*

4811-0070-2688, v. 3

**EXHIBIT A**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 511-2020-00336 |

| FLORIDA COMMISSION ON HUMAN RELATIONS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)*<br>MR. ARTHUR H STOKES | Home Phone<br>(407) 272-2098 | Year of Birth |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| 4704 DORAL POINTE DRIVE,  KISSIMMEE, FL 34758 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name<br>ABLE SERVICES | No. Employees, Members<br>15 - 100 | Phone No.<br>(646) 565-5578 |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|
| 200 SOUTH ORANGE AVENUE, 868 FOLSOM ST #1123, SAN FRANCISCO, CA 94107,  ORLANDO, FL 32801 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br>☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest         Latest<br>07-17-2016   11-18-2019<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I have been employed by the Respondent since 04/25/16 as a Building Engineer. On or about 08/22/19 I made a complaint via email to Ms. Short, HR, with subject Equal Employment Opportunity regarding Mr. Teague, Supervisor. In my complaint, among many things, I reported inappropriate comments from Mr. Teague towards me like calling me half man in 2016, that a coworker would leapfrog over me in 2017, and that if I grew a beard I would look like a terrorist in 2019. He also called me the lowest man in the totem pole in 2019. I also noted he had disseminated a Hurt Feelings Report on 05/31/19, and that I fear retribution could occur from my email. I was informed an investigation would be conducted, but I was never given information on the outcome or status of said investigation. On 10/04/19 I was issued a final warning with a 2 day suspension by Mr. Teague for alleged insubordination, in what I believe was retaliation for the 08/22/19 email. On 11/11/19 I sent another email to Ms. Short with subject racial discrimination; wherein among many other things, I alleged the write up and its related suspension were retaliation, and recounted a Last Chance meeting Teague and I had on 10/25/19 where we discussed how I felt he treated me different because of my race. I also mentioned in my complaint how I applied for an Able Engineer job post on 08/29/19 and was passed over, as I had been passed over for promotion in

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Arthur Stokes on 12-18-2019 10:49 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 511-2020-00336 |

| FLORIDA COMMISSION ON HUMAN RELATIONS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

previous years. I reported discriminatory discipline, in that I was disciplined for arriving more than 15-20 minutes earlier, and white employees are not disciplined for that. I also reported discrimination with regard to overtime, as white employees dictate when and how many hours they get to work overtime and I dont. Moreover, I reported a discriminatory term and condition of employment; whereas, I am the only Engineer required to check keys in and out, and restated that I felt the comments made by Mr. Teague throughout the years were harassment due to my race. Two hours later, Ms. Short replied that they had to review both of my emails so that they could address my concerns. That same day Mr. Bopp, Regional Manager, met with Teague to discuss the racial discrimination. On 11/18/19 I reported 2 additional instances of racial discrimination by Mr. Teague to Ms. Short, by way of different terms and conditions of employment. This time it was the handling of my workers compensation injury. I injured myself on 10/14/19 and subsequent to that Mr. Teague began taking pictures and video of me at work; which I reported to Mr. Bopp on 10/30/19. In contrast Mr. Garcia, injured himself on 11/11/19 and Teague was not following him around taking pictures or video. Moreover, Garcia was not being questioned about his productivity following his injury, and I was. On 11/18/19 I also reported to Ms. Short discriminatory and possibly retaliatory training denial by Mr. Teague. Whereas, on 11/12/19 the day after my racial discrimination email, Mr. Teague informed all Engineers he was working on providing Mul T Lock training for all, except me. These examples are only a sample of numerous other forms of discrimination and retaliation. Ms. Shorts response on 11/18/19 via email was Please refrain from stating everything is racially motivated. Until we investigate your claims and get statements and investigate all parties  It cannot be believed that it is racially motivated or the fact that you are being discriminated against

I believe that I have been retaliated and discriminated against due to my race (black) with regard to discipline, promotion, training, harassment, different terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Arthur Stokes on 12-18-2019 10:49 AM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT:  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**EXHIBIT B**

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

| | |
|---|---|
| To:  **Arthur H. Stokes**<br>       **4704 Doral Pointe Drive**<br>       **Kissimmee, FL 34758** | From:  **Tampa Field Office**<br>          **501 East Polk Street**<br>          **Room 1000**<br>          **Tampa, FL 33602** |

☐  *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **511-2020-00336** | **Raymond M. Nieves,**<br>**Investigator** | **(813) 202-7949** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Evangeline Hawthorne*                                    2/8/2021

Enclosures(s)

**Evangeline Hawthorne,**
**Director**

*(Date Issued)*

cc:    **Andrew Prescott, Partner**            **Deborah Frimmel, Esq.**
        **ABLE SERVICES**                        **911 Outer Road**
        **One Citizens Plaza, Suite 500**
        **Providence, RI 02903**                 **Orlando, FL 32814**

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --**   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or
record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you
did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was
*issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office.  If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
<u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*